*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 14, 2015                    518848
_____

BLACK BEAR FUEL OIL, LTD.,
                    Appellant,
          v                                    MEMORANDUM AND ORDER

SWAN LAKE DEVELOPERS LLC et al.,
                    Respondents.
_____

Calendar Date:  February 11, 2015

Before:  McCarthy, J.P., Egan Jr., Devine and Clark, JJ.

                    _____


          Orseck Law Offices, PLLC, Liberty (Gerald Orseck of
counsel), for appellant.

          Kalter Kaplan Zeiger & Forman, Woodbourne (Terry S. Forman
of counsel), for respondents.

                    _____


Egan Jr., J.

          Appeal from an order of the Supreme Court (LaBuda, J.),
entered October 11, 2013 in Sullivan County, which denied
plaintiff's motion for summary judgment in lieu of complaint.

          In May 2007, plaintiff, which owned and operated a fuel oil
and kerosene delivery business from its premises located at 32
Stanton Corners Road in the Town of Liberty, Sullivan County,
sold its business to Darren Mapes for $425,000.  Mapes, in turn,
incorporated under the name Jus-Sar Fuel, Inc., and Jus-Sar
thereafter leased the physical premises from plaintiff for $1,500
per month.  As part and parcel of the sale of the business,
plaintiff executed a covenant not to compete, wherein it agreed,
among other things, that it would not — for a period of five
years — own or operate a fuel delivery business or otherwise

engage in conduct that competed with Jus-Sar's business within a 50-mile radius of the business premises. According to Mapes, plaintiff thereafter violated the covenant not to compete when, in or about August 2008, plaintiff's president, Angela Streppone, and her associate, Henry Hulst, began handing out business cards advertising Polar Bear Fuel Oil, Inc. – a corporation allegedly formed by one of plaintiff's former employees and purportedly operated out of Hulst and Streppone's residence.

In the interim, in September 2007, defendant Swan Lake Developers LLC purchased the Stanton Corners Road premises – consisting of a residence, an office and two garages – from plaintiff for $450,000. The underlying mortgage was guaranteed by defendant George Kaufman and, in conjunction with this sale, Jus-Sar's lease was assigned to Swan Lake. According to defendants' brief, the parties were aware – at the time that Swan Lake purchased the premises – of outstanding code enforcement issues with respect thereto.

Beginning in July 2009, individuals identified as "Angela" and "Hank" began filing complaints with the Town of Liberty relative to the premises now owned by Swan Lake – contending, among other things, that the premises were being utilized without the required certificates of occupancy. Thereafter, in November 2009, plaintiff and Swan Lake entered into a settlement agreement and, the following month, executed a subordination and modification agreement, pursuant to the terms of which plaintiff agreed to subordinate its 2007 mortgage to a new mortgage in the amount of $150,000. Although not entirely clear from the record, the new mortgage apparently was designed to enable Swan Lake to pay off its indebtedness to plaintiff – amounting to $155,000 – pursuant to an agreed-upon payment schedule commencing on December 1, 2012 and, further, to undertake the repairs and renovations required in order to bring the premises into compliance with the local building code. The subordination agreement was guaranteed solely by defendant Yitzchok Kaufman, and the corresponding settlement agreement expressly provided that "[t]he covenants, representations, warranties, and agreements . . . of the parties hereto shall survive the execution and delivery of this [a]greement."

According to George Kaufman, Swan Lake thereafter retained an engineering firm to address and resolve the outstanding code enforcement issues – both for the purpose of complying with settlement/subordination agreements and "also [to] finalize arrangements between Swan Lake . . . and Jus-Sar for the continued rental of the premises and its prospective purchase by Jus-Sar for the amount of $300,000." Apparently dissatisfied with the resulting proposal, Mapes decided to hire his own engineer. In the interim, however, according to both George Kaufman and Mapes, Hulst and Streppone continued to file repeated code enforcement complaints, which ultimately resulted in the issuance of a cease and desist order.[1] Such order, in turn, led to Jus-Sar vacating the Stanton Corners Road premises and the resulting loss of Swan Lake's tenant and prospective buyer. The corresponding loss of income, according to George Kaufman, led to Swan Lake's failure to make the December 2012 payment required by the settlement/subordination agreements.

Thereafter, in April 2013, plaintiff commenced this action by moving for summary judgment in lieu of complaint (see CPLR 3213) – alleging that defendants failed to make the required payments. Defendants opposed the requested relief and asserted counterclaims sounding in tortious interference with business relations, breach of the implied covenant of good faith and fair dealing and prima facie tort. Supreme Court denied plaintiff's motion, deemed plaintiff's motion papers to be a complaint and directed defendants to interpose their answer and counterclaims within 20 days. This appeal by plaintiff ensued.

We affirm. Preliminarily, inasmuch as the subordination agreement giving rise to this action was guaranteed solely by Yitzchok Kaufman, plaintiff is not entitled to summary judgment against George Kaufman, as the latter bears no obligation to plaintiff under the terms of that agreement. As to the remaining

---

[1] Although Mapes' affidavit predates the execution of the settlement/subordination agreements in late 2009, the chronology of events set forth in, among other things, the affidavit tendered by George Kaufman suggests that the misdeeds undertaken by Hulst and Streppone continued after that time.

defendants, we agree with Supreme Court that the subject counterclaims are inextricably intertwined with the underlying settlement/subordination agreements, thereby precluding an award of summary judgment (see GTE Automatic Elec. v Martin's Inc., 127 AD2d 545, 547 [1987]; compare Stevens v Phlo Corp., 288 AD2d 56, 56 [2001]).  Notably, both the affidavit tendered by George Kaufman and the affirmation offered by one of defendants' attorneys, which references a December 2010 letter authored by the attorney,[2] delineate actions undertaken by plaintiff following the execution of the relevant agreements that, according to defendants, resulted in the loss of their tenant, otherwise impaired their rights and/or ability to utilize the subject property and ultimately led to their inability to comply with the terms of the subordination agreement.  Under these circumstances, plaintiff's motion for summary judgment in lieu of complaint was properly denied.

Devine and Clark, JJ., concur.


McCarthy, J.P. (concurring in part and dissenting in part).

Plaintiff was entitled to summary judgment against defendants Swan Lake Developers LLC and Yitzchok Kaufman because defendants' allegations and submissions fail to state defenses or counterclaims that could offset plaintiff's entitlement to payment pursuant to the settlement/subordination agreements.  The majority decision recognizes that defendants' allegations are factually intertwined with the subject contractual agreements, and concludes, apparently on that basis, that plaintiff's motion for summary judgment seeking payment pursuant to those agreements

---

[2]  The attorney's affirmation essentially incorporated the provisions of a December 2010 letter that he authored, wherein he summarized, among other things, plaintiff's conduct following the execution of the subject agreements.  As such affirmation was "subscribed and affirmed by him to be true under the penalties of perjury," it has "the same force and effect as an affidavit" (CPLR 2106 [a]) and may, together with other proof in the record, be properly considered in opposition to plaintiff's motion.

was properly denied.  However, the majority fails to explain how defendants' allegations and submissions support their alleged defense and counterclaims.  Inasmuch as defendants' factual allegations and evidence do not support a legal basis to provide them any relief, I respectfully dissent.

Defendants opposed plaintiff's motion for summary judgment pursuant to CPLR 3213 on the grounds of intertwined defenses and counterclaims of breach of the implied covenant of good faith and fair dealing, tortious interference with business relations and prima facie tort.  As to defendants' contract defense, the implied covenant of good faith and fair dealing did not impose an obligation on plaintiff to remain silent as to unlawful use of the subject premises notwithstanding defendants' claim that said use was necessary to obtain the funds required to pay plaintiff. While all contracts formed under this state's laws contain an implicit covenant of good faith and fair dealing, that covenant only makes enforceable "promises which a reasonable person in the position of the promisee would be justified in understanding were included" in an agreement (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks and citations omitted]; accord Ochal v Television Tech. Corp., 26 AD3d 575, 576 [2006], lv dismissed 7 NY3d 741 [2006]; see Gizara v New York Times Co., 80 AD3d 1026, 1027 [2011]).  Given that the agreements are silent with respect to the use of the premises in violation of the relevant building code, reasonable actors in defendants' position would not be justified in understanding that plaintiff had agreed to not report its unlawful use. Accordingly, the terms and covenants of the subject agreements did not bar plaintiff from reporting the ongoing use of the premises in violation of the relevant building code.  Even if this were not the case, the specific implied covenant that defendants propose — an agreement intended to capture some private profit through the evasion of building code compliance — is void as contrary to this state's public policy (see Riverside Syndicate, Inc. v Munroe, 10 NY3d 18, 23 [2008]; see generally Town Law §§ 130 [1], 138).  Accordingly, defendants failed to allege facts that could sustain a defense to their contractual obligations.

Defendants' factual allegations also fail to make out causes of action for tortious interference with business relations or prima facie tort. Defendants allege that plaintiff's tortious acts consisted of its employees handing out business cards for a newly formed fuel delivery business and reporting building code violations in an attempt to put Jus-Sar Fuel, Inc. – a competitor in the fuel delivery industry – out of business. These factual allegations lead to a single reasonable conclusion that plaintiff was acting, at least in part, out of economic self interest. A party acting out of economic self interest does not commit tortious interference with business relations or prima facie tort (see Carvel Corp. v Noonan, 3 NY3d 182, 189 [2004]; 10 Ellicott Sq. Ct. Corp. v Violet Realty, Inc., 81 AD3d 1366, 1368 [2011], lv denied 17 NY3d 704 [2011]; Lawrence v Union of Orthodox Jewish Congregations of Am., 32 AD3d 304, 305 [2006]; Besicorp, Ltd. v Kahn, 290 AD2d 147, 150 [2002], lv denied 98 NY2d 601 [2002]; Quail Ridge Assoc. v Chemical Bank, 162 AD2d 917, 919 [1990], lv dismissed 76 NY2d 936 [1990]).

Having concluded that defendants failed to raise any defenses or counterclaims that could offset plaintiff's entitlement to payment pursuant to the subject agreements, plaintiff is entitled to summary judgment granting it relief against Swan Lake and Yitzchok Kaufman (see Riverside Inn Real Estate Partnership, LP v Niagara Gorge Jet Boating, Ltd., 34 AD3d 1328, 1329 [2006], lv denied 8 NY3d 807 [2007]; Stevens v Phlo Corp., 288 AD2d 56, 56 [2001]).[1] As per the terms of the settlement/subordination agreements, plaintiff is entitled to recover $155,000 with interest at 12% per year from December 29, 2009.

_____

[1] I agree with the majority that defendant George Kaufman had no contractual obligation to plaintiff and that, therefore, summary judgment was properly denied as to him.

ORDERED that the order is affirmed, with costs.




ENTER:

Robert D. Mayberger
Clerk of the Court